IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOE HAND PROMOTIONS, INC.        *
                                 *
v.                               *        Civil Action No. WMN-11-1973
                                 *
DOCK STREET ENTERPRISES, INC.    *
et al.                           *
                                 *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Before the Court is Defendants' Motion to Consolidate, ECF No. 14, and Motion for Summary Judgment. ECF No. 10. Both of the motions are fully briefed. Upon a review of the papers and applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and the motion to consolidate will be denied. The motion for summary judgment will be granted in part and denied in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Dock Street Enterprises, Inc. through its owners and officers operates Dock Street Bar & Grill ("Dock Street") in Annapolis, Maryland.[1] Dock Street maintains a commercial account with Comcast, a cable provider, to provide the content shown on the television sets in its establishment. Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") is a Pennsylvania corporation that

---

[1] The Complaint identifies the principals and co-owners of Dock Street - Helene Fox, Kyle Fox and Michael Wroten - as additional Defendants. The Court will refer to Defendants collectively as Dock Street.

1

engages in the distribution of various sporting event programs. Relevant to this action, Joe Hand paid for and was granted exclusive television distribution rights to the Ultimate Fighting Championship 100: Making History (hereinafter referred to as "the Program"), which was telecast nationwide on July 11, 2009. Joe Hand enters into sublicensing agreements with numerous commercial establishments wanting to exhibit its programs to their patrons.

On July 11, 2009, Dock Street contacted Comcast to inquire about the pricing and availability of the Program. Comcast informed Dock Street that the rate charged for the program would be $54.99. Dock Street ordered the Program and showed it on its televisions to about 70 patrons. There was no advance promotion for the Program and Dock Street charged its standard $5.00 weekend cover charge. A charge of $54.99 subsequently appeared on Dock Street's Comcast bill which Dock Street paid.

An investigator hired by Joe Hand observed the Program being exhibited at Dock Street. Alleging that Dock Street was unauthorized to broadcast the program, Joe Hand filed this suit on July 18, 2011. The Complaint asserts the following violations of federal and state law: 1) unauthorized publication or use of communications, 47 U.S.C. § 605, 2) unauthorized reception of cable service, 47 U.S.C. § 553, and 3) conversion. The claim for conversion is subject to supplemental jurisdiction

2

pursuant to 28 U.S.C. § 1367.  Joe Hand seeks relief in the form of statutory and/or compensatory damages, as well as reasonable attorneys' fees at the Court's discretion.

On July 29, 2011, Dock Street filed the present motion for summary judgment.  First, Dock Street argues that Section 605 applies only to intercepted satellite signals, and not to cable transmissions.  Second, Dock Street asserts that its payment to Comcast, combined with a reasonable inference that Comcast was an authorized provider, precludes a charge of unauthorized cable service.  Finally, Dock Street insists that it is not subject to a conversion claim because no specific facts have been alleged that show wrongful intent.  Alternatively, Dock Street asks this Court to decline supplemental jurisdiction for the state law claim pursuant to 28 U.S.C. § 1367.  Finally, Dock Street posits that, if it prevails on its motion, it is also entitled to attorneys' fees.

In addition to the suit filed by Joe Hand, Dock Street has been named as a Defendant in a similar case.  J&J Sports Productions, Inc. v. Dock Street Enters., Inc., Civil Action No. RDB-11-1596.  Another distributor, J&J Sports Productions, Inc. ("J&J Sports") alleges that, on a separate night, Dock Street unlawfully exhibited a boxing program to which it had exclusive rights.  Since Dock Street purchased the J&J Sports program from Comcast in the same way it purchased the Program, Dock Street

has moved to consolidate.  Joe Hand opposes on the grounds that

it is not related to J&J Sports, but rather is a competitor, and

it does not want to share its business practices in open court.

Dock Street counters that Plaintiffs, represented by the same

counsel, have brought 21 similar cases this year in this Court

alone, and consolidation would avoid unnecessary duplication.

## II. MOTION TO CONSOLIDATE

Where there are multiple cases involving common questions

of law or fact, a court in its discretion may order

consolidation.  Fed. R. Civ. P. 42.  In exercising that

discretion, courts should weigh "the interests of judicial

convenience in consolidating the cases against the delay,

confusion, and prejudice consolidation might cause" to the

parties.  Servants of Paraclete, Inc. v. Great Am. Ins. Co., 866

F. Supp. 1560, 1572 (D.N.M. 1994).  The moving party bears the

burden of showing that consolidation is desirable.  Id.

Neither Joe Hand nor cases like this one are unfamiliar to

the Court.  Commercial distributors sue to enforce licensing

rights numerous times each year in district courts across the

country, and Joe Hand has been a party to many such suits.  It

is not, however, a party in the case that is pending before

Judge Bennett.  The plaintiff in that case, J&J Sports, is a

recognized competitor of Joe Hand.  Both plaintiffs oppose

consolidation, citing concerns with the possibility of divulging

4

their unique business practices and prices during the course of litigation.

While both fact and law are similar, a lack of relatedness between the plaintiffs counsels against consolidation.  Each plaintiff has the right to drive its own litigation and seek a just remedy.  That both Plaintiffs have chosen to retain the same counsel is also their right.  Not only would the lawyer have expertise in this area, but also attorney-client privilege precludes sharing of information.  Furthermore, the unauthorized broadcasts occurred on different nights and involved different fees, so discovery would require some independent inquiry.  The Court finds that Dock Street has failed to show consolidation is preferable and its motion will therefore be denied.

Dock Street raises the valid observation that, as Plaintiffs are seeking to recover attorney's fees in all of these very similar actions, the consolidation which Plaintiffs strenuously oppose would help limit, somewhat, Plaintiffs' litigation costs associated with these suits.  Should attorney's fees be awarded, the Court can certainly take into account the boilerplate nature of these actions and the Plaintiffs' election to pursue them severally against the same defendant.

**III. Motion for Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue

as to any material fact and . . . the moving party is entitled
to judgment as a matter of law." Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986).  An issue is considered genuine "if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  The moving party has the initial burden,
but "the [nonmovant] is not thereby relieved of his own burden
of producing in turn evidence" once it appears that there is no
genuine issue of fact.  Id. at 256.

In considering the motion for summary judgment, the Court
first turns to the statutes alleged to have been violated.  Dock
Street argues that § 605 applies only to satellite signals and,
by virtue of the fact that it received the Program via cable,
that section is inapplicable.  To be sure, both "Sections 553
and 605 have generated numerous cases which grapple with how to
apply potentially overlapping provisions to various fact
situations." Kingvision Pay Per View, Ltd. v. Duermeier, 24 F.
Supp. 2d 1179, 1182 (D. Kan. 1998).  An overlap occurs when both
sections are applied to the same program, rather than tracing
the violation to either satellite or cable.  The difficulty
arises because the life cycle of a television program quite
often begins as satellite signals and ends as cable
transmissions.  Ambiguity arises when determining whether each

statute should apply to unauthorized interception of satellite,

cable, or both.

Section 553, by its plain language, clearly applies only to

cable systems:

> No person shall intercept or receive . . . any
> communications service offered over a cable system, unless
> specifically authorized to do so by a cable operator or as
> may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1).  Section 605, however, prohibits the

unauthorized interception of "radio communication," which some

courts equate to satellite transmissions and others interpret

more broadly.  Id. § 605(a)(6).  The primary question is

whether "radio communication" also applies to a cable

transmission that originates from a satellite signal.

A circuit split has developed as a result of this statutory

confusion.  The Seventh Circuit concludes that intercepted cable

transmissions are governed by § 553 only, rejecting any notion

of overlap by citing the legislative history.  See United States

v. Norris, 88 F.3d 462, 464 (7th Cir. 1996).  The Second Circuit

maintains that both sections 605 and 553 may apply, as in the

case of cable descramblers, also known as "black boxes."  See

International Cablevision, Inc. v. Sykes, 75 F.3d 123 (2d Cir.

1993).  These alternative interpretations have been picked up by

district courts across the country, although the weight of

authority appears to favor the position of the Seventh Circuit.
The Fourth Circuit has not squarely addressed the issue.

The undersigned adopts the Seventh Circuit's view that §
605 applies to the interception of cable signals "before they
begin to travel through the cable," while Section 553 applies to
transmissions "at the point in the system that the transmission
is carried by coaxial cable or wires." Kingvision Pay Per View,
Ltd, 24 F. Supp. 2d at 1183.[2]  In other words, the statutes do
not overlap.  Liability does not run throughout the entire
lifecycle of a signal.  Rather, it is the point at which the
unauthorized use occurs that determines which statute applies in
a given case.  Not only is this interpretation more
administrable, it also fits into the statutory scheme intended
by Congress.

As the Seventh Circuit observed, a survey of the
legislative history shows that Congress has distinguished
between "wire" and "radio" for nearly a century.  Norris, 88

---

[2]  The undersigned acknowledges that other decisions of this
Court have held otherwise.  See J&J Sports Productions, Inc. v.
Castro Corp., Civ. No. AW-11-188, 2011 WL 5244440 (D. Md. Nov.
1, 2011); J&J Sports Productions, Inc. v. Quattrocche, Civ No.
WMN-09-3420 (D. Md. June 7, 2010).  I note, however, that these
decisions, like many of those finding that both statutes apply
to intercepted cable transmissions, were decided on motions for
entry of default judgment and thus, the applicability of § 605
to a cable program was not clearly placed before the Court.
Furthermore, from the allegations in a complaint alone, it is
often not apparent whether the programming was intercepted as a
satellite or a cable transmission.

F.3d at 464-66.  The first substantive regulations in this area,
enacted in 1912, made the two technologies mutually exclusive,
whereby "radio was essentially defined as any electronic
telecommunication that was not a wire communication."  Id. at
464.  In 1968, the term "wire" was altogether removed from
Section 605, except for the first clause, which regulates
communications personnel rather than unauthorized reception.
Id. at 465.  With adoption of Section 553, Congress further
defined the dichotomy between wire and radio.  The Committee
report explained that those cable services transmitted "over-
the-air" (by satellite) continue to be subject to Section 605,
but only "'to the extent reception or interception occurs prior
to or not in connection with, distribution of the service over a
cable system.'"  Id. at 466 (quoting H.R. Rep. No. 934, at 83-
84, reprinted in 1984 U.S.C.C.A.N. at 4720-21).  It is this
reasoning that the Court follows today.

     In opposition, Joe Hand argues that final delivery by cable
"does not change the nature of the stolen transmission itself."
That's Entertainment, Inc., 843 F. Supp. at 1000.  Taking this
statement to its logical conclusion, however, would make Section
553 altogether redundant of Section 605.  Given that the major
networks transmit their programs to the cable company using
satellite signals, all cable would also be classified as
satellite.  Congress could not have intended the very same act

to be covered by two statutes, each carrying a different damage award.  There must be something distinct about "wire" and "radio," cable and satellite.  To be sure, Defendants may be liable under both statutes, but only if unauthorized use occurs at both points in the system.  Since Dock Street intercepted the Program as a cable transmission,[3] it is subject to Section 553 only and Dock Street's motion will be granted as it relates to a violation of Section 605.

Dock Street also seeks to avoid any liability under Section 553 because it purchased the Program in good faith.[4]  It argues that the Court may "reasonably infer" that Joe Hand had "some sort of agreement with Comcast" to carry the Program and market it to Comcast customers.  ECF No. 12 at 6.  At this stage in the litigation, however, inferences are to be made in favor of plaintiffs, not defendants.  Furthermore, the statute itself is

---

[3] The affidavit submitted by Dock Street establishes that it received the Program through the cable service provided by Comcast.  Fox Aff. ¶ 7.  Without offering anything to call that affirmation into question, Plaintiff suggests that it is premature to determine liability under § 605 because, "at this time a secondary violation via satellite cannot be ruled out." ECF No. 15 at 8.  Where Dock Street acknowledges that it showed the Program through its cable connection, there is no logical basis to posit or imagine some secondary satellite violation.

[4] Plaintiff notes that Comcast's 14-page Terms and Conditions document includes a disclaimer that authorization must be received not just from Comcast, but also "the applicable program or event distributor," in this case Joe Hand.  ECF No. 15-1 at ¶ 21.1.  Contrary to the Comcast bill, which Dock Street paid, Joe Hand's rate was $925.00 for a commercial establishment the size of Dock Street to show the Program.

a strict liability statute and precludes a good faith defense;
knowledge is only relevant when assessing damages. 47 U.S.C. §
553(c)(3)(C) (allowing in situations where the Court finds that
that violator "was not aware and had no reason to believe that
his acts constituted a violation of this section, the court in
its discretion may reduce the award of damages to a sum of not
less than $100"). The Complaint alleges and the affidavit
submitted by Plaintiff in opposition to the summary judgment
motion reaffirms that Dock Street exhibited the Program without
authorization and that is sufficient, at this stage, to
establish liability under Section 553. Compl. ¶ 12; Joe Hand
Jr. Aff. ¶ 3.

    The Court now turns to the remaining state law claim, which
is for conversion. Conversion requires "a distinct act of
ownership or dominion exerted by a person over the personal
property of another which either denies the other's rights or is
inconsistent with it." Parker v. Kowalsky & Hirschhorn, P.A.,
722 A.2d 441, 447 (Ct. Spec. App. Md. 1999). Essential to such
a claim is a showing that the defendant intended to assert a
right that was inconsistent with ownership. See Restatement
(Second) of Torts § 222A (1965). Dock Street maintains it
purchased the Program in good faith, arguing throughout the
motion that any violation was at most an honest mistake.
Plaintiff counters, however, that Dock Street's contract with

Comcast included a disclaimer clearly stating that authorization must be received not just from Comcast, but also "the applicable program or event distributor." ECF No. 15-1 at ¶ 21.1.  While it is perhaps questionable that a cable customer would be familiar with all the fine print in their cable contract, this provision creates at least an issue of fact as to Dock Street's good faith.  Accordingly, it is premature to dispose of this claim and Dock Street's motion will be denied as it relates to the state law conversion claim.[5]

Finally, the Court seeks to clarify which of the parties might be eligible to receive attorneys' fees in this case. Pursuant to 47 U.S.C. § 553(c)(2)(C), the court may direct recovery of costs, including reasonable attorneys' fees, to an "aggrieved party" who prevails.  An aggrieved party is defined as "any person with proprietary rights in the intercepted communication."  47 U.S.C. § 605(d)(6).  While an award is mandated for violations of Section 605, it is discretionary for violations of Section 553.  <u>Charter Communications Entm't I, LLC v. Burdulis</u>, 367 F. Supp. 2d 16, 20 (D. Mass. 2005).  As Joe Hand rightly points out, Dock Street is not the "aggrieved party" in this case.  It had no proprietary rights to the

---

[5]  The Court notes that, where there is recovery under § 553, courts will generally not also allow recovery under a conversion claim as that would result in a double recovery.  <u>See</u> <u>J&J Sports Prod. Inc. v. J.R. 'Z Neighborhood Sports Grille, Inc</u>. Civ. No. 9-3141, 2010 WL 1838432 (D.S.C. Apr. 5, 2010).

Program, and is therefore not entitled to an award of attorneys'
fees regardless of the end result.

For the reasons stated, Defendants' Motion to Consolidate
is DENIED and the Motion for Summary Judgment is GRANTED in part
and DENIED in part.  A separate order consistent with this
memorandum will be issued.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: December 8, 2011.