IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND


JOE HAND PROMOTIONS, INC.      *
                               *
v.                             *   Civil Action No. WMN-11-1973
                               *
DOCK STREET ENTERPRISES, INC.  *
et al.                         *
                               *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

                         **MEMORANDUM AND ORDER**

     Plaintiff filed this action on July 18, 2011.  Before answering and before any discovery was taken, Defendants filed a motion for summary judgment on July 29, 2011.  On December 8, 2011, this Court granted the motion in part and denied it in part, holding that Defendants were entitled to judgment as to Count I, but denying the motion as to Counts II and III.  On December 22, 2011, Defendants filed a motion for reconsideration, ECF No. 22, essentially rearguing their entitlement to judgment as to Counts II and III and also raising, for the first time, the argument that there is no basis for asserting any claim against the individual defendants.  The motion for reconsideration is fully briefed.

     This case relates to Defendants' alleged unauthorized showing of a July 11, 2009, broadcast of a prize fighting program (the Program) for which Plaintiff claims exclusive distribution rights.  Defendants' primary defense is that they

showed the Program on the televisions in their bar relying in good faith on the belief that the $54.99 that they paid to Comcast, their cable television provider, permitted them to lawfully show the Program.  That is an understandable belief.  Plaintiff's position, however, is that Comcast was not authorized to permit business establishments to show the Program for what it asserts is the residential rate.

   The Court granted Defendants' motion as to Count I which alleged a violation of 47 U.S.C. § 605 on the ground that § 605 relates to the unlawful interception of satellite transmissions, not cable transmissions.  The Court denied the motion as to Count II which alleges a violation of 47 U.S.C. § 553 which relates to the unlawful interception of cable transmissions.  The Court noted that § 553 is a strict liability statute and, therefore, Defendants' good faith belief that they were authorized by Comcast to show the program is not a defense.  The Court also denied the motion as to Count III which asserted a state law conversion claim.  In making that ruling, the Court relied on a provision in a Comcast contract submitted by Plaintiff that requires business customers to obtain authorization from the applicable program or event distributor before showing certain pay-per-view programming.  While questioning that a typical cable television customer would be familiar with the fine print in their cable contract, the Court

concluded that this provision was sufficient to at least create an issue of fact as to whether Defendants exhibited the Program in good faith.[1]

In moving for reconsideration, Defendants raise three arguments. First, Defendants re-assert their belief that they were authorized by Comcast to show the Program and cite to the provision in § 553 that permits the interception of a cable program if "'<u>specifically authorized to do so by a cable operator</u>.'" ECF No. 22 (citing 47 U.S.C. § 553(a)(1), emphasis added by Defendants). Plaintiff, however, in opposing the motion for summary judgment, submitted the affidavit of its president in which he stated that Plaintiff retained the <u>exclusive</u> distribution rights to the Program and that no other company was authorized to permit its interception. ECF No. 17, Aff. of Joe Hand, Jr. at ¶ 3. Defendants' reliance on

---

[1] Although the Court assumed, without deciding, that good faith might be a defense to a conversion claim, there is some question on that issue. See <u>First Union Nat. Bank v. New York Life Ins. and Annuity Corp.</u>, 152 F. Supp. 2d 850, 855 (D. Md. 2001) ("'[t]he intent required [for a conversion] is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights . . . . A mistake of law or fact is no defense.'") (quoting <u>Keys v. Chrysler Credit Corp.</u>, 494 A.2d 200, 208 (1985)); <u>but see</u> Restatement (Second) of Torts § 222A (1965) (identifying the "actor's good faith" as a factor to consider in "determining the seriousness of the interference and the justice of requiring the actor to pay the full value").

authorization given by an entity not itself authorized to give such authorization cannot defeat liability under a strict liability statute. The Court concluded and continues to believe that there is a sufficient dispute of material fact on the issue of authorization to prevent the grant of summary judgment as to Count II.[2]

As to Count III, Defendants take issue with the evidence submitted by Plaintiff related to the alleged contractual relationship between Defendants and Comcast. Defendants raised some evidentiary issues in their reply brief but in their motion for reconsideration note for the first time that the contract submitted by Plaintiff was for a time period that did not include the date on which the Program was purchased and shown by Defendants. Defendants suggest that the Court should therefore disregard the submitted contact, ECF No. 15-1, Ex. A, and grant them summary judgment as to Count III.

Defendants certainly could have raised the issue regarding the date of the proffered contract in their reply brief and did not do so. That is probably grounds enough to deny the instant motion, in that motions for reconsideration are not the vehicle

---

[2] If, as Defendants claim, Comcast grants its business customers "authorization" to show pay-per-view programs by paying the residential rate, it would seem that those business customers facing fines under § 553 might have some recourse against Comcast. The Court notes that Defendants filed a third-party complaint against Comcast. Defendants, however, subsequently voluntarily dismissed that third-party complaint.

to make arguments that could have been made when briefing the original motion. See Almy v. Sebelius, 749 F. Supp. 2d 315, 338 (D. Md. 2010). Even were the Court to consider this new argument, however, it would not find Defendants entitled to judgment.

In Defendants' motion for summary judgment, they offered some evidence that they were authorized by Comcast to show the Program. In opposing that motion, Plaintiff offered the testimony of its president, cited above, that no other entity besides Plaintiff was authorized to transmit the Program. In addition to that broad representation regarding the exclusivity of its rights to the Program, Plaintiff proffered what it represented as "a true and accurate copy of the Comcast Business Terms and Conditions applicable to Defendants' account." ECF 15-1, Richard Kind Aff. at ¶ 3. Plaintiff did not represent that this was the actual agreement between Defendants and Comcast, but asked that the Court take judicial notice of these terms of service in that they are "'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Id. (quoting Datel Holdings Ltd. v. Microsoft Corp., 712 F. Supp. 2d 974, 985 (N.D. Cal. 2010)). Plaintiff also noted that it had not had any opportunity to conduct any discovery before Defendants filed their motion for summary judgment. Id. ¶ 4.

By asserting its exclusive rights to the Program, Plaintiff's opposition to the motion for summary judgment put at issue whether Comcast could have granted Defendants authorization to show the program.  The copy of Comcast's standard terms and conditions for business customers simply added some additional support for Plaintiff's claim of exclusivity.  Even without that submission, there remained a question as to whether Defendants were lawfully authorized to show the Program.  Furthermore, the Court notes that if Defendants' agreement with Comcast contains different terms than those in the agreement submitted by Plaintiff, Defendants certainly could have submitted that agreement but did not do so and have yet to do so.  Plaintiff, on the other hand, would have no access to the agreement until given the opportunity to take some discovery.

As to Defendants' last argument regarding the liability of the individual defendants, this is clearly an argument that was never raised or hinted at in the original summary judgment motion and it strains credulity that Defendants attempt to argue that it was.  They contend that because each of the three individual defendants were identified as movants on the summary judgment motion and that "each and every one of them asked the Court to grant them judgment on all three counts," ECF No. 31 at 4, the Court should have sua sponte reached the issue of

individual liability. "The fact that all of the Defendants moved together and asked for the same relief on each claim does not mean that individual defendants made no request or do not deserve a ruling." Id.

Defendants deserve a ruling, but only as to the issues actually raised by them in their motion. While the individual defendants moved for summary judgment on each claim, it was on the identical grounds as those on which the corporate defendant moved. After the opportunity for discovery, raising this issue in a second motion for summary judgment might be appropriate.[3] It is not appropriate, however, in a motion for reconsideration.

Accordingly, IT IS this 7th day of February, 2012, by the United States District Court for the District of Maryland, ORDERED:

1) That Defendants' Motion for Reconsideration, ECF No. 22, is DENIED; and

2) That the Clerk of the Court shall transmit a copy of this Memorandum and Order to all counsel of record.

```
                    _____/s/_____
                    William M. Nickerson
```

---

[3] The Court does not intend to suggest that it is to any parties' advantage to go through discovery and yet another round of briefing. Under the circumstances presented by the current record, Defendants may have already incurred in attorney's fees more than the Court would be inclined to impose in penalties under § 553. The Court would encourage the parties to direct their attention to settling this matter, perhaps by requesting a settlement conference before a Magistrate Judge.

7

Senior United States District Judge